**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X

JEFFREY SMITH,                                 :        Civil Case No.: 1:24-cv-04633-JPC

                Plaintiff,          :

      v.                                       :

                                   :

META PLATFORMS, INC d/b/a META,                :

                                   :

                Defendant.        :
-------------------------------------------------------------- X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS

<br>

**WIGDOR LLP**

Valdi Licul
William R. Baker

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
wbaker@wigdorlaw.com

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................................2

BACKGROUND ...............................................................................................................................2

I.        Statement of Facts...............................................................................................................2

ARGUMENT .....................................................................................................................................5

I.        The EFAA ............................................................................................................................5

II.       Retaliation for Reporting Sexual Harassment......................................................................6

III.      The EFAA Applies in This Case ........................................................................................9

CONCLUSION..................................................................................................................................10

**TABLE OF AUTHORITIES**

Cases                                                                                                                                                 Page(s)

Alexander v. Possible Prods., Inc.,
    336 F. Supp. 3d 187 (S.D.N.Y. 2018)............................................................................................ 8

Delo v. Paul Taylor Dance Foundation, Inc.,
    685 F. Supp. 3d 173 (S.D.N.Y. 2023)....................................................................................... 6, 9

Ingersoll-Rand Co. v. McClendon,
    498 US. 133 (1990)...................................................................................................................... 9

Johnson v. Everyrealm, Inc.,
    657 F. Supp. 3d 535 (S.D.N.Y 2023)......................................................................................... 5

Kaytor v. Elec. Boat Corp.,
    609 F.3d 537 (2d Cir. 2010)........................................................................................................ 8

King v. Aramark Servs, Inc.,
    96 F.4th 546 (2d Cir. 2024) ............................................................................................... 6, 7, 8

Meritor Sav. Bank, FSB v. Vinson,
    477 U.S. 57 (1986)................................................................................................................... 6, 9

Morales v. Trans World Airlines, Inc.,
    504 U.S. 374 (1992).................................................................................................................... 9

Newton v. LVMH,
    No. 23 Civ. 10753 (LAP), 2024 WL 3925757 (S.D.N.Y. Aug. 23, 2024) ............................... 5

Olivieri v. Stifel, Nicolaus & Co., Inc.,
    112 F.4th 74 (2d Cir. 2024) ....................................................................................................... 5

Pilot Life Ins. Co. v. Dedeaux,
    481 U.S. 41 (1987)...................................................................................................................... 9

Quinn v. Green Tree Credit Corp.,
    159 F.3d 759 (2d Cir. 1998)........................................................................................................ 8

Raniola v. Bratton,
    243 F.3d 610 (2d Cir. 2001)........................................................................................................ 8

Singh v. Meetup LLC,
    No. 23 Civ. 9502 (JPO), 2024 WL 3904799 (S.D.N.Y. Aug. 22, 2024)................................... 8

Statutes

9 U.S.C. § 401(4) ............................................................................................................. 5

9 U.S.C. § 402(a) .......................................................................................................... 5, 9

9 U.S.C. § 402(b) ............................................................................................................. 5

9 U.S.C. §§ 401-402 ..................................................................................................... 2, 10

42 U.S.C. § 2000e .......................................................................................................... 4

CPLR § 7515(a)(2) and (b)(i) ......................................................................................... 10

N.Y.C. Admin. Code §§ 8-101 ...................................................................................... 5

N.Y. Exec. Law §§ 290 ................................................................................................. 5

**PRELIMINARY STATEMENT**

Plaintiff Jeffrey Smith ("Smith" or "Plaintiff") submits this Memorandum of Law in Opposition to Defendant Meta Platforms, Inc. d/b/a Meta's ("Meta", the "Company" or "Defendant") Motion to Compel Arbitration and Stay the Proceedings ("Motion to Compel"). The Court should deny Defendant's Motion in its entirety because Plaintiff's claims are non-arbitrable pursuant to the Ending Forced Arbitration Act, 9 U.S.C. §§ 401-402 ("EFAA").

**BACKGROUND**

### I.    Statement of Facts

Smith was hired by Defendant (then "Facebook") in 2018.  Dkt. No. 16 ("Amend. Compl.") ¶ 21.  He brought incredible credentials to Meta and has been a well-reviewed employee and manager who has won praise from his reports and his peers.  Id. ¶¶ 22-27.  Smith was awarded substantial grants for his performance four years running and was in discussions for a promotion as recently as 2022.  Id. ¶ 28.  His upward trajectory suddenly changed when he began to complain about Meta's hostile work environment for women.  Id. ¶ 29.

In the summer of 2023, Smith noted that two high-performing female Meta employees were treated less well than male peers.  One well-reviewed direct report of Smith's, Employee A, had her role downsized in favor of lower-performing men.  Id. ¶¶ 32-34.  Meanwhile, a female researcher, Employee B, was neglected by her male manager Ran Rubin ("Rubin") and reviewed more harshly than men on her team.  Id. ¶¶ 36-38.  Smith fielded a variety of complaints from women on his team about a pattern of neglectful management, overly critical feedback and bias on the part of male managers, as well as systematic preferential treatment towards men in promotions and ratings, a lack of female hires, and poor career development support for women at Meta.  Id. ¶¶ 41-42, 53-54.  Smith complained about the treatment of women on his team and

also relayed the complaints he had received to his manager Sasha Arnaud ("Arnaud"), his skip-level and Human Resources ("HR").  Id. ¶¶ 40, 43, 55.  Further, Smith complained verbally and in writing about Rubin's treatment of the women on his team in particular.  Id. ¶ 45-47.  Rubin had advocated for men to be elevated over women on his team, denigrated the competence of women on his team, and gave them poor performance reviews.  Id. ¶¶ 45-51.

In August 2023, Smith gave Employee A more responsibilities.  Id. ¶ 58.  Following this decision, in addition to the complaints he had made about Meta's hostile work environment, Smith's formal review was withheld.  Id. ¶¶ 60-61.  Instead, Smith was presented with an informal review that was negative.  Id. ¶¶ 61.  Smith felt intimidated by this critical feedback.  Id. ¶ 62.  However, in October 2023, Smith resumed his efforts to stand up for women at Meta, as he believed that the Company's conduct was illegal.  Id. ¶ 63.  He raised his concerns about Employee B with Employee Resources ("ER").  Id. ¶¶ 64-65.  Smith also complained to Arnaud about the treatment of women in Meta's workplace in the fall of 2023.  Id. ¶¶ 65, 68-69.

On December 14, 2023, Smith was on a 10-member Q&A panel at Meta that was entirely male.  Id. ¶¶ 70-71.  Smith insisted that the panel address diversity issues on his team and made statements in favor of improving diversity at Meta.  Id. ¶ 72.  Mere weeks later, Smith was warned he would be receiving a negative annual performance review.  Id. ¶ 73.  This did not stop Smith from standing up for women in the workplace, and he expressed concerns about Meta's hostile workplace for women on January 24, 2024 and February 2, 2024.  Id. ¶¶ 74-76.  In particular, Smith complained to HR and Arnaud that a fellow manager, Nathan Danielson ("Danielson"), intended to fill a research role with a junior white man, even though the two most qualified Meta employees were both women.  Id. ¶¶ 75-80.  Arnaud told Smith that his response was not "productive," and then warned Smith about taking already-planned time off.  Id. ¶¶ 81-

3

82.  At the same time, Smith expressed further concerns about Meta's hostile work environment to ER.  Id. ¶¶ 83-85.

On March 14, 2024, Smith again received a poor performance review from Arnaud, that did not contain the usual anonymous peer or direct feedback—it only contained comments from Arnaud.  Id. ¶¶ 86-88.  Smith received lowered compensation as a result.  Id. ¶ 89.  Smith was also made ineligible for an internal transfer by this poor review, and was told that he should search for a new position within Meta (which was impossible) or resign.  Id. ¶¶ 91-92.

On April 25, 2024, Smith informed Meta that he intended to assert retaliation claims under federal, state and city laws.  Id. ¶ 93.  On June 18, 2024, Smith filed this action alleging retaliation.  Id. ¶ 94.  On June 20, 2024, Smith filed a charge of retaliation with the EEOC.  Id. ¶ 95.  As a result of these protected actions, Smith's supervisors engaged in an escalating pattern of behavior intended to force Smith to leave his employment, sending Smith a message that he had no future at Meta.  Id. ¶ 96.  Following his complaints, Smith's peers would not meet with him, and Arnaud set off on a campaign of micromanagement, making harassing complaints to ER about Smith's work and chastising Smith for minor missteps.  Id. ¶¶ 97-106.  Smith had no way to transfer internally due to his poor performance review (although he made efforts) and he began to experience metal health ramifications because of his poor treatment at work.  Id. ¶¶ 107-109.  Permanently unable to advance or regain the level of compensation he had once earned, Smith was forced to leave Meta on July 22, 2024.  Id. ¶¶ 109-110.

Meta's actions violated the anti-retaliation and anti-interference provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL").

**ARGUMENT**

**I.     The EFAA[1]**

The EFAA states that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to [a] . . . sexual harassment dispute."  9 U.S.C. § 402(a).  A "'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment."  9 U.S.C. § 401(4).  The Second Circuit recently held that "retaliation resulting from a report of sexual harassment is relat[ed] to conduct that is alleged to constitute sexual harassment."  Olivieri v. Stifel, Nicolaus & Co., Inc., 112 F.4th 74, 92 (2d Cir. 2024) (quotation omitted).  Accordingly, "invalidation of an arbitration agreement" is required under the EFAA where the plaintiff "file[s] a complaint containing facts that allege either conduct constituting sexual harassment or sexual assault or retaliation for reporting such conduct."  Newton v. LVMH, No. 23 Civ. 10753 (LAP), 2024 WL 3925757, at *7 (S.D.N.Y. Aug. 23, 2024); see also Johnson v. Everyrealm, Inc., 657 F. Supp. 3d 535, 551, n. 13 (S.D.N.Y 2023) (noting that the EFAA applies "not only [to] claims of sexual harassment, but also disputes 'relating to conduct that is alleged to constitute sexual harassment'" such as "a lawsuit bringing a claim against an employer for retaliating against a plaintiff who had reported sexual harassment") (quoting 9 U.S.C. § 401(4)).  Finally, it is the province of a "court, rather than an arbitrator," to determine whether the EFAA applies "irrespective of whether the [arbitration] agreement purports to delegate such determinations to an arbitrator."  9 U.S.C. § 402(b).

---

[1] Plaintiff raised his arguments related to the EFAA in his September 25, 2024 letter opposition to the Court.  Dkt. No. 18 at 2-3.  Defendant did not address this issue in its Motion to Compel Arbitration and Stay the Proceedings.  See generally Dkt. No. 21.

## II.      Retaliation for Reporting Sexual Harassment

Smith does not allege that he was sexually harassed.  Rather, he alleges that he was retaliated against for complaining about sexual harassment – that is, that Meta took adverse action against him because he protested that women at Meta were subjected to a hostile work environment based on sex.

A claim for "sexual harassment in the workplace can proceed under two theories: quid pro quo harassment and a hostile work environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64-65 (1986).[2]  The hallmark of a sex-based hostile work environment claim is that the employer "has created a hostile or abusive working environment" based on sex. Id. at 67.  "[A]n employer can create a hostile environment through a series of discriminatory occurrences that transpire over days and years." King v. Aramark Servs, Inc., 96 F.4th 546, 561 (2d Cir. 2024). The "hostile work environment is formed and shaped by an assemblage of discriminatory acts" or "a constellation of events over time." Id.  By contrast, discrete-act claims (i.e., standard gender discrimination claims) involve "individually actionable" acts, such as "terminating employment, failing to promote, denying a transfer, and refusing to hire." Id. at 559. Importantly, a sexual harassment claim based on a hostile work environment can be comprised of individual "acts that might also support a discrete-act discrimination claim." Id.

In King, for example, the Second Circuit sustained a sex-based hostile work environment claim where the plaintiff "suffered a steady course of mistreatment from [her manager], culminating in her termination." Id. at 553.  The manager would "single out King in front of

---

[2] "This is true both for federal claims brought under Title VII . . . and state claims brought under the NYSHRL and NYCHRL." Delo v. Paul Taylor Dance Foundation, Inc., 685 F. Supp. 3d 173, 182 (S.D.N.Y. 2023) (internal citation omitted).

other Aramark employees and cite her performance [on a project] . . . as a negative example of what not to do," even though her "performance exceeded that of some of" her male colleagues. Id.  The manager also falsely "rated [King] as inconsistently meeting expectations," denied "her a merit-based salary increase," and "fabricated performance-related complaints to try to get her fired."  Id. at 554.  In addition, the manager "excluded King from important financial meetings and interfered with her management by meeting with her directors, clients, and subordinates without notifying her."  Id.  Further, the manager "gave King unrealistic deadlines and expectations, denied her appropriate office space, and spoke to her in a rude, condescending, dismissive manner – often in front of other colleagues and superiors."  Based on these allegations, among others, the Second Circuit concluded that a "jury could . . . find" that King was "subject[ed] . . . to a pervasive, hostile work environment."  Id. at 563.

Smith's protests about Meta's treatment of women parallel the sex-based hostile work environment allegations in King.  For instance, Smith complained about "misogyny" at Meta. Amend. Compl. ¶ 4.  He protested that women were given fewer responsibilities after a reorganization, id. ¶ 31; evaluated "more critically" than men, id. ¶ 37; subjected to "sexist management," id. ¶¶ 38-39, "poor treatment," id. ¶ 56, and "sexist treatment," id. ¶ 55; and "experience[d] . . . poor management because of their sex," id. ¶ 47.  He also complained that Meta managers "exhibited a pattern of neglectful management, overly critical feedback and bias against women they oversaw," including failing to support women's "career development," while simultaneously displaying "systematic preferential treatment towards men."  Id. ¶¶ 42-43. Smith identified one male manager as having "denigrated" a female employee's "competence as a manager," id. ¶ 49, and as having a "tendency to exclude women," id. ¶ 65, protesting that the manager had been "harshly critical of women while advocating for men," even though there was

7

no "evidence" to support these criticisms because "all the women had significant experience and no complaints against them." Id. ¶ 50. Finally, Smith complained "about the small number of women hired into Meta's research department, the lack of promotions for women and poor career development for female researchers." Id. ¶ 54. In other words, Smith was not merely objecting to discrete acts of discrimination (although some of the examples he raised may have been independently actionable), he was protesting an "assemblage" of acts and "constellation of events over time" that be believed[3] created a sex-based hostile environment. King, 964 F.4th at 561.

That each of the discreet acts was not facially discriminatory does not matter. The Second Circuit has recognized that sexual harassment "can include employer action based on sex but having nothing to do with sexuality." Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001) (cleaned up) (quotation omitted) (collecting authorities); see also Kaytor v. Elec. Boat Corp., 609 F.3d 537, 548 (2d Cir. 2010) (noting that "overt gender hostility" of a supervisor towards a female plaintiff can constitute sexual harassment because such treatment is "motivated by the plaintiff's gender") and Alexander v. Possible Prods., Inc., 336 F. Supp. 3d 187, 195 (S.D.N.Y. 2018) (stating that "liability for sexual harassment . . . is determined by the existence of any unequal treatment" on the basis of sex).[4]

---

[3] To allege a retaliation claim, Smith "need not establish that [he] successfully described in [his] complaint conduct amounting to a violation," but only that he had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (internal citation omitted), abrogated on other grounds by Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86 (2d Cir. 2020).

[4] In Singh v. Meetup LLC, No. 23-Civ.-9502 (JPO), 2024 WL 3904799, at * 6 (S.D.N.Y. Aug. 22, 2024), a court found that a plaintiff had not alleged sexual harassment under the local statutes because she did not "adequately allege[] 'unwelcome verbal or physical behavior' based on gender." However, it is not the case that a plaintiff must plead that she was subjected to "inappropriate comments" to make out a sexual harassment claim. Id. at *7. Respectfully, Singh is wrong. While "unwelcome verbal or physical behavior" can create a sex-based hostile work

Nor does it matter that Smith's pleading does not include a separate cause of action for sexual harassment or for retaliation for protesting sexual harassment. "It is a well-established principle that, when evaluating the viability of a complaint, courts focus on the substance of the factual allegations and not how the causes of action are labeled." Delo, 685 F. Supp. 3d at 181. "And there is nothing in the text of the EFAA that suggests its applicability hinges on how a claim is labeled." Id.

In short, Smith has alleged that he was retaliated against for protesting what he believed was a hostile work environment for women. As a result, this action "relates to" a "sexual harassment dispute," rendering Meta's arbitration agreement "[in]valid and [un]enforceable." 9 U.S.C. § 402(a).

## III.     The EFAA Applies in This Case

As this case indisputably relates to sexual harassment, the EFAA applies. The ordinary meaning of the term "relates to" is "a broad one—'to stand in some relation; to have some bearing or concern; to pertain; refer; to bring in association with or connection with.'" Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)). Congress chose "broadly worded" and "deliberately expansive" language to exempt certain suits from arbitration. Id. (quoting Ingersoll-Rand Co. v. McClendon, 498 US. 133, 138 (1990) and Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987)). Thus, a court's authority under the EFAA is limited to determining whether the claims have some "bearing," "concern," or "association with or connection with" a sexual harassment dispute.

---

environment, it is not a necessary requirement, as King and numerous other cases cited here make clear. All that is required are allegations that the employer "has created a hostile or abusive working environment" based on sex. Vinson, 477 U.S. at 67.

9

Smith's Complaint easily clears this hurdle.  In his pleadings, Smith has identified a "dispute" [5] between himself and his former employer concerning whether he raised protected complaints regarding sexual harassment and was retaliated against for those complaints in violation of New York law.  He has identified specific "conduct"[6] by his supervisor that he contends constitutes sexual harassment, which he complained about.  Accordingly, there can be no doubt that Smith has "filed" a case that "relates to" a "sexual harassment dispute" and, therefore, his arbitration agreement with Defendant is neither "valid [n]or enforceable."  9 U.S.C. § 401.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny Defendant's Motion to Compel Arbitration in its entirety.[7]

---

[5]      A "dispute" is "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit.  DISPUTE, Black's Law Dictionary (12th ed. 2024).

[6]      "Conduct" is "[p]ersonal behavior . . . the manner in which a person behaves." CONDUCT, Black's Law Dictionary (12th ed. 2024).

[7]      It remains Plaintiff's contention that the plain language of his arbitration agreement exempts from arbitration any "legal dispute or claim that has been expressly excluded from arbitration by statute."  Thus, Meta incorporated into the arbitration agreement Civil Practice Law and Rules 7515(a)(2), which expressly prohibit "mandatory arbitration to resolve any allegation or claim of discrimination." CPLR § 7515(a)(2) and (b)(i).

Dated: October 18, 2024
     New York, New York

Respectfully submitted,

**WIGDOR LLP**


By: _____
     Valdi Licul
     William R. Baker

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
wbaker@wigdorlaw.com

*Counsel for Plaintiff*

11